IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-CR-00160-GKF |
| ) | |
| ANTONIO DASHAWN BAKER, ) | |
| a/k/a "Antonio Baker," ) | |
| a/k/a "Antonio D. Baker," ) | |
| a/k/a "Antonio Deshaun Baker," ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss the Indictment [Doc. 21] of defendant Antonio Dashawn Baker. For the reasons set forth below, the motion is denied.

**I.     Background/Procedural History**

On January 29, 2024, Chief Judge for the Northern District John F. Heil III entered a Judgment in a Criminal Case adjudicating Mr. Baker guilty of a single count of Possession of Cocaine with Intent to Distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), a crime punishable by a term of imprisonment of over one year. *See* 21 U.S.C. § 841(b)(1)(C) and 18 U.S.C. § 3156(a)(3). *United States v. Baker*, Case No. 23-CR-221-JFH (Jan. 29, 2024), [Doc. 33].

On May 20, 2024, a grand jury returned an Indictment charging Mr. Baker with one count of Felon in Possession of a Firearm and Ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [Doc. 2]. Section 922(g)(1) provides as follows: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). The Indictment alleges that Mr. Baker, knowing that he had previously been convicted of Possession of Cocaine with Intent to Distribute in Case No. 23-CR-00221-JFH—a

crime punishable by a term of imprisonment exceeding one year—knowingly possessed a Smith & Wesson, Model SD9VE, 9mm caliber pistol, serial number FBU3057 and twenty-five rounds of assorted 9mm Luger caliber ammunition. [*Id.*].

Mr. Brown seeks to dismiss the Indictment, arguing that 18 U.S.C. § 922(g)(1) violates his constitutional right to bear arms as set forth in the Second Amendment to the U.S. Constitution. [Doc. 21]. The government filed a response in opposition [Doc. 24] and, with the court's leave, Mr. Baker filed a reply [Doc. 27]. The court held a hearing on the motion on August 21, 2024. [Doc. 36].

## II.     Second Amendment Jurisprudence

Prior to considering the parties' arguments, it is necessary to understand the "still-developing area" of Second Amendment jurisprudence, a field "still in the relatively early innings." *United States v. Rahimi*, 602 U.S. —, 144 S. Ct. 1889, 1923 (2024) (Kavanaugh, J., concurring).

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the U.S. Supreme Court recognized that the Second Amendment "protect[s] an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022); *see also Heller*, 554 U.S. at 595 ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms.").[1] However, the Court also recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and stated that, "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of

---

[1] In *McDonald v. City of Chicago,* 561 U.S. 742 (2010), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment, such that the right applies to the States.

firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," all of which were "presumptively lawful." *Heller*, 554 U.S. at 626-27, 627 n.26.

In light of the *Heller* decision, in *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), the Tenth Circuit considered a constitutional challenge to § 922(g)(1). In a published decision, the Tenth Circuit rejected the constitutional challenge, reasoning, "[t]he Supreme Court . . . explicitly stated in *Heller* that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *McCane,* 573 F.3d at 1047. Thus, *McCane* "foreclose[d]" any argument that § 922(g)(1) violated the Second Amendment. *See United States v. Gieswein*, 887 F.3d 1054, 1064 n.6 (10th Cir. 2018).

Things remained much the same until the Supreme Court issued its decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). There, the Court began by noting that, "[i]n the years since [*Heller* and *McDonald*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen,* 597 U.S. at 17. However, the Court rejected the two-part means-ends test, reasoning it was "one step too many." *Id.* at 19. Instead, the Court articulated the relevant inquiry, stating:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24. To determine whether a firearms regulation is "consistent with the Nation's historical tradition of firearm regulation," the *Bruen* Court stated that district courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a

comparable tradition of regulation." *Id.* at 27.

The Court recognized that the inquiry will often require "reasoning by analogy" and "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar,'" including both in "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 28-29. Significantly, however, the Court stated that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original).

As recognized by Justice Barrett, "[c]ourts . . . struggled with this use of history in the wake of *Bruen*." *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring). For this court's part, the court applied the historical analysis as set forth in *Bruen* and concluded that "§ 922(g)(1) is 'consistent with the Nation's historical tradition of firearm regulation' and the statute" was not facially unconstitutional. *United States v. Coombes*, 629 F. Supp. 3d 1149, 1160 (N.D. Okla. 2022); *United States v. Mayfield*, 660 F. Supp. 3d 1135 (N.D. Okla. 2023). However, the court permitted an as-applied challenge. *See United States v. Forbis,* 687 F. Supp. 3d 1170, 1176-79 (N.D. Okla. 2023).

But, as recognized by Chief Judge Heil, "opinions by well-respected judges reach[ed] conflicting conclusions" and "a circuit split [was] developing on the issue." *United States v. Nakedhead,* No. 23-CR-109-JFH, 2023 WL 5277905, at **2, 2 n.2 (E.D. Okla. Aug. 16, 2023).

In the midst of the historical surveys, on September 15, 2023, the Tenth Circuit Court of Appeals issued the published decision in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023). Therein, the Circuit considered whether *Bruen* had overruled *McCane*. Recognizing that *Bruen* "created a test" that "didn't exist when [it] decided *McCane*," the Circuit stated "the emergence of a new test doesn't necessarily invalidate . . . earlier precedent." *Vincent,* 80 F.4th at 1200. Rather,

the Circuit concluded it was obligated to apply its prior precedent and could not "jettison *McCane*" unless *Bruen* "indisputably and pellucidly abrogated" it. *Id*.

Looking to *McCane*, the Circuit characterized its decision as "rel[ying] solely" on the language in *Heller* describing felon dispossession statutes as "presumptively lawful." *Id.* at 1201. Noting that six of the nine Justices had reaffirmed language in *Heller* that it was not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons" and, further, that the Court had apparently approved of "shall-issue" regimes and background checks, the Circuit concluded that *Bruen* "did not indisputably and pellucidly abrogate our precedential opinion in *McCane*." *Id.* at 1201-02. Thus, *Bruen* did not overrule *McCane* and, in the Tenth Circuit, § 922(g)(1) was not facially unconstitutional. *Id.* at 1202.

Further, the Circuit stated that, "[u]nder *McCane*, we have no basis to draw constitutional distinctions based on the type of felony involved." *Id.* at 1202. Rather, "*McCane* . . . upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm." *Id.; see also In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) ("We have already rejected the notion that *Heller* mandates an individualized inquiry concerning felons pursuant to § 922(g)(1)."). Thus, Thereafter, district courts in this Circuit uniformly applied the Tenth Circuit's precedential decision in *Vincent* to reject both facial and as-applied constitutional challenges to § 922(g)(1). *See, e.g., United States v. Gaines*, No. 23-10121-JWB, 2024 WL 2260938 (D. Kan. May 17, 2024); *United States v. Montoya*, No. 21-CR-00997-KWR, 2024 WL 1991494, at *3 (D.N.M. May 6, 2024) (internal citation omitted) ("Despite the Defendant's arguments about how other courts have decided § 922(g)(1), *Vincent* clearly states that § 922(g)(1) remains constitutional after *Bruen*. Even while *Vincent* is being appealed, this Court is obligated to apply the precedent of the Tenth Circuit."); *United States v. Girty*, No. 24-CR-031-JFH, 2024 WL 1677718 (E.D. Okla. Apr. 17,

2024); *United States v. Mumford*, No. CR-24-10-F, 2024 WL 1183673, at *1 (W.D. Okla. Mar. 19, 2024) ("[C]ontrolling Tenth Circuit authority leaves the court no room for consideration of the constitutionality of § 922(g)(1) either on its face or as considered in light of the nature of the predicate felony offense.").[2]

On June 21, 2024, the U.S. Supreme Court issued its opinion in *Rahimi,* which considered the constitutionality of 18 U.S.C. § 922(g)(8).  There, the Court recognized that "some courts have misunderstood the methodology" of *Heller* and *Bruen*, which "were not meant to suggest a law trapped in amber."  *Rahimi,* 144 S. Ct. at 1897.  The Court articulated the Second Amendment constitutional test to require lower courts to consider "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition."  *Id.* at 1898 (emphasis added).  Specifically, the court must "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'"  *Id.* (quoting *Bruen,* 597 U.S. at 26-31).  The Court

---

[2] The court particularly notes the decision of fellow U.S. District Judge John D. Russell, who explained:

> If this Court had a blank slate on which to write this Opinion, it would, by necessity, follow the *Bruen* analysis and consider whether the mere possession of a handgun and ammunition is protected Second Amendment activity (it is) and whether, in this case, the Government has demonstrated that the restriction set forth in § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation (it has not). But the slate is not blank.  The Tenth Circuit has spoken, and, in doing so, has unequivocally declared that its decision in *McCane* remains good law.  This Court will follow that guidance, which, as the concurrence in *McCane* recognizes, is how it should be – even if the practice leaves open the possibility that the law would have been better served if the regulations *Heller* addressed in dicta had been left to later cases.

*United States v. Gaskey*, — F. Supp. 3d —, 2024 WL 1624846, at *3 (N.D. Okla. Apr. 15, 2024) (internal citations and quotations omitted).

reiterated that "a 'historical *twin*' is not required," *Rahimi,* 144 S. Ct. at 1903 (quoting *Bruen,* 597 U.S. at 30), because even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen,* 597 U.S. at 30).

Having reviewed the history of American gun regulations, the Court recognized that, "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Rahimi*, 144 S. Ct. at 1899. Specifically, the Court pointed to (1) surety laws and (2) "going armed" laws. *Id.* at 1899-901. Surety laws "targeted the misuse of firearms" and "provided a mechanism for preventing violence before it occurred." *Rahimi*, 144 S. Ct. at 1900. In contrast, "going armed" laws "provided a mechanism for punishing those who had menaced others with firearms" through "forfeiture of the arms . . . and imprisonment." *Rahimi,* 144 S. Ct. 1900-01. Thus, the Court held:

> Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed. Section 922(g)(8) is by no means identical to these founding era regimes, but it does not need to be. Its prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent.
>
> Like the surety and going armed laws, Section 922(g)(8)(C)(i) applies to individuals found to threaten the physical safety of another. This provision is "relevantly similar" to those founding era regimes in both why and how it burdens the Second Amendment right. Section 922(g)(8) restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do. Unlike the regulation struck down in *Bruen*, Section 922(g)(8) does not broadly restrict arms use by the public generally.

*Rahimi,* 144 S. Ct. 1901 (internal citations omitted).

Although not purporting to "undertake an exhaustive historical analysis . . .of the full scope of the Second Amendment," the Court concluded, "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the

Second Amendment." *Rahimi,* 144 S. Ct. at 1903.

Less than two weeks later, on July 2, 2024, the U.S. Supreme Court granted certiorari in *Vincent v. Garland*, vacated the judgment, and remanded the matter to the Tenth Circuit for further consideration in light of *Rahimi*. *Vincent v. Garland,* — S. Ct. —, 2024 WL 3259668 (July 2, 2024).

On August 5, 2024, the Tenth Circuit received the Judgment of the U.S. Supreme Court, recalled the mandate issued in *Vincent*, and vacated its prior judgment. *Vincent v. Garland*, No. 21-4121 (10th Cir. Aug. 5, 2024), [Doc. 010111089964]. That same day, the Circuit set a briefing schedule, directing the parties to file supplemental briefs "addressing the impact of *Rahimi* on the issues in this appeal." *Vincent v. Garland*, No. 21-4121 (10th Cir. Aug. 5, 2024), [Doc. 010111089995].

### III.   Analysis

Mr. Baker argues that § 922(g)(1) is both facially unconstitutional and unconstitutional as applied to him. Prior to considering Mr. Baker's challenges, however, it is first necessary to consider the status of the *McCane* decision in light of the foregoing Second Amendment jurisprudence.

#### A.   *Status of McCane and Vincent*

The government argues that, despite the order granting certiorari, vacating judgment, and remanding (GVR) in *Vincent*, neither *Bruen* nor *Rahimi* abrogated *McCane* and *McCane* forecloses Mr. Baker's challenges. [Doc. 24, pp. 9-11].

The Supreme Court has stated that a GVR "is appropriate when 'intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a

redetermination may determine the ultimate outcome' of the matter." *Wellons v. Hall*, 558 U.S. 220, 225 (2010) (quoting *Lawrence v. Chater,* 516 U.S. 163, 167 (1996) (per curiam)).  Although "[t]he GVR order is not equivalent to reversal on the merits, nor is it 'an invitation to reverse,'" it does require the Circuit (and this court) to determine whether *Rahimi* "compels a different resolution" of *Vincent*.  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 845 (6th Cir. 2013).

As discussed above, in *Vincent,* the Circuit characterized *McCane* as having "relied solely on. . . language from *Heller*." *Vincent,* 80 F.4th at 1201.  Thus, despite recognizing the two-step test articulated in *Bruen*, the court did not apply it.  Rather, the Circuit focused on whether anything in *Bruen* cast doubt on *Heller*'s language or "the constitutionality of longstanding prohibitions on possession of firearms by convicted felons." *Vincent,* 80 F.4th at 1201.

Having reviewed *Rahimi*, the court concludes that it compels a different resolution of *Vincent*.  Specifically, in *Rahimi,* the Supreme Court recognized that "some courts have misunderstood the methodology of [its] recent Second Amendment cases." *Rahimi,* 144 S. Ct. at 1897.  In response to such misunderstandings, the Court repeatedly emphasized that its Second Amendment precedent "direct[s] courts to examine our 'historical tradition of firearm regulation' to help delineate the contours of the right." *Id*.  "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances,'" with "why and how the regulation burdens the right" being "central to th[e] inquiry." *Id.* at 1898; *see also id.* at 1910 (Gorsuch, J., concurring) ("Among all the opinions issued in this case, its central messages should not be lost.  The Court reinforces the focus on text, history, and tradition, following exactly the path we described in *Bruen*.").

In *Vincent*, the Tenth Circuit did not conduct a historical inquiry. It did not consider the "central" inquiry of "why and how" § 922(g)(1) burdens a convicted felon's Second Amendment right. *Rahimi,* 144 S. Ct. at 1898. Instead, the Circuit relied solely on *Bruen*'s consideration of *Heller*'s language regarding "longstanding prohibitions" that are "presumptively lawful." *Vincent,* 80 F.4th at 1201-02. In doing so, the Tenth Circuit "stretch[ed]" *Heller*'s words "beyond their context." *Rahimi,* 144 S. Ct. at 1910 (Gorsuch, J., concurring). *Rahimi* requires that the court "examine our 'historical tradition of firearm regulation'" to "ascertain whether [§ 922(g)(1)] is 'relevantly similar' to laws that our tradition is understood to permit" and therefore compels a different result. *Rahimi,* 144 S. Ct. at 1897-98; *see also United States v. Duarte*, 101 F.4th 657, 668 (9th Cir. 2024), *rehearing en banc granted and vacated by,* 108 F.4th 786 (9th Cir. 2024) ("'Simply repeat[ing] *Heller*'s language' about the 'presumptive[] lawful[ness]' of felon firearm bans will no longer do after *Bruen*."); *United States v. Morgan*, No. 23-10047-JWB, 2024 WL 3890184, at *4 (D. Kan. Aug. 21, 2024) (saying of the *Vincent* GVR Order, "[t]he court interprets that as indicating that the Supreme Court means what it says: the constitutionality of laws regulating the possession of firearms under the Second Amendment must be evaluated under the *Bruen* framework").

B.     Facial Challenge

As previously stated, Mr. Baker first argues that § 922(g)(1) is facially unconstitutional. However, this court previously performed the *Bruen* historical analysis and rejected a facial challenge to § 922(g)(1). *See United States v. Coombes*, 629 F. Supp. 3d 1149, 1160 (N.D. Okla. Sept. 21, 2022). In *Coombes*, this court looked to the historical evidence and concluded that § 922(g)(1)'s prohibition on the possession of firearms by felons is "consistent with the Nation's historical tradition of firearm regulation." *Coombes,* 629 F. Supp. 3d at 1156-62; *see also Forbis,*

687 F. Supp. 3d at 1173 (N.D. Okla. 2023); *Mayfield*, 660 F. Supp. 3d 1135.  The historical evidence has not changed, and the court incorporates its prior analysis.

Further, nothing in *Rahimi* suggests that the court should revisit its prior conclusion.  Rather, in *Rahimi*, the Supreme Court emphasized that a facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'"  *Rahimi,* 144 S. Ct. at 1898 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  That is, "to prevail, the Government need only demonstrate that Section 922(g)[1] is constitutional in some of its applications." *Rahimi,* 144 S. Ct. at 1898.

In *Rahimi*, the Court acknowledged that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 1902.  Such tradition included a system for punishing those who had menaced or harmed others with a firearm through forfeiture of the arms and imprisonment. *Id.* at 1901-02.  Although not purporting to perform an exhaustive search, the court notes that felony offenses include shooting or discharging a firearm with intent to kill, Okla. Stat. tit. 21, § 652(A); drive-by shooting, 18 U.S.C. § 36; and assault with a deadly weapon with the intent to do bodily harm, 18 U.S.C. § 113(a)(3).  Disarming persons guilty of such offenses is "consistent with the principles that underpin our regulatory tradition" and the court is persuaded that § 922(g)(1) can be lawfully applied under some circumstances.  *Rahimi,* 144 S. Ct. at 1898; *see also United States v. Canada*, 103 F.4th 257, 258-59 (4th Cir. 2024).  Because § 922(g)(1) is lawful in some of its applications, Mr. Baker's facial challenge fails.  *Rahimi,* 144 S. Ct. at 1898.

Further, *Rahimi* reiterated that, pursuant to the *Bruen* inquiry, "a 'historical twin' is not required."  *Rahimi,* 144 S. Ct. at 1903.  Rather, "[t]he law must comport with the *principles*

underlying the Second Amendment, but it need not be a 'dead ringer.'" *Id.* at 1898 (emphasis added). Section 922(g)(1) is "relevantly similar" to the historical analogues identified by this court in *Coombes*, as well as the "going armed" laws discussed in *Rahimi*. *Id.* at 1898-901; *Coombes*, 629 F. Supp. 3d at 1157-60 (collecting authorities). That is, § 922(g)(1) regulates arms-bearing for a permissible reason—protection of the public from persons who pose a threat to the safety of others—*Rahimi,* 144 S. Ct. at 1899, 1901—through permanent disarmament, a punishment consistent with our historical tradition. *See id.* at 1898; *see also id.* at 1901 (citing 4 Blackstone 149); *Coombes*, 629 F. Supp. 3d at 1157 (bills of attainder and New York laws prohibiting felons from owning property); *see also United States v. Jones*, — F. Supp. 3d —, 2024 WL 3297060, at *4 (E.D. Mich. July 2, 2024) (internal citation omitted) ("[T]he *Rahimi* Court made a point to mention that disarmament can be justified 'once a court has found that the defendant' represents an objectionable threat, as may be the case with every felon, since the full panoply of due process rights must have been allowed before conviction."). Thus, § 922(g) "is consistent with the principles that underpin our regulatory tradition" and § 922(g)(1) survives Mr. Baker's facial challenge. *Rahimi,* 144 S. Ct. at 1898, 1902.

    C.    *As Applied Challenge*

"A facial challenge considers the restriction's application to all conceivable parties, while an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248 (10th Cir. 2023) (quoting *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014)). The distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). "[I]t does not speak at all to the substantive rule of law necessary to establish a constitutional violation," and therefore the same substantive

constitutional analysis applies. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019); *see also Gross v. United States,* 771 F.3d 10, 14-15 (D.C. Cir. 2014) ("[T]he substantive rule of law is the same for both challenges."). Accordingly, the court must consider whether § 922(g)(1), as applied to Mr. Baker, is consistent with the Second Amendment. That is, whether permanently disarming Mr. Baker is "consistent with the Nation's historical tradition of firearm regulation," including "how and why" § 922(g)(1) burdens Mr. Baker's "right to armed self-defense." *Bruen*, 597 U.S. at 24, 28-29.[3]

This court has previously concluded that "'the historical record' demonstrates 'that the public understanding of the scope of the Second Amendment was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public *if armed*.'" *Forbis*, 687 F. Supp. 3d at 1178 (quoting *United States v. Harrison*, 654 F. Supp. 3d 1191, 1198 (W.D. Okla. 2023)) (emphasis added). Further, in *Rahimi*, the Court acknowledged that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi,* 144 S. Ct. at 1902.

As previously stated, the Indictment alleges that Mr. Baker was previously convicted of Possession of Cocaine with Intent to Distribute.[4] [Doc. 2]. Courts across the country have

---

[3] Pursuant to the *Bruen* inquiry, the court must first determine whether "the Second Amendment's plain text covers an individual's conduct," and, if so, "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. This court previously concluded that convicted felons fall within "the people" as contemplated by the Second Amendment. *Coombes*, 629 F. Supp. 3d at 1154-56; *Forbis,* 687 F. Supp. 3d at 1175. The court declines to revisit its prior conclusion and therefore considers only whether applying § 922(g)(1) to Mr. Baker "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

[4] As set forth by the court during the August 21, 2024 hearing [Doc. 36], in resolving Mr. Baker's motion to dismiss, the court limits itself to the allegations of the Indictment. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (internal citation omitted) ("An indictment should be tested

recognized that drug trafficking and drug distribution are "closely related" to violence. *See United States v. Alaniz,* 69 F.4th 1124, 1130 (9th Cir. 2023) ("[D]rug trafficking plainly poses substantial risks of confrontation that can lead to immediate violence."); *United States v. Bailey*, 743 F.3d 322, 340 (2d Cir. 2014) ("[D]rug trafficking . . . [is] frequently associated with violence."); *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) ("[D]rug dealing is notoriously linked to violence."); *United States v. Barton,* 633 F.3d 168, 174 (3d Cir. 2011) (recognizing that drug trafficking is "closely related to violent crime"), *overruled on other grounds, Binderup v. Att'y Gen. United States of America*, 826 F.3d 336 (3d Cir. 2016); *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011) ("Drug crimes are associated with dangerous and violent behavior."); *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) ("[C]ourts have recognized the high level of violence that is not uncommonly associated with the drug distribution business.").

In fact, some courts have concluded that "[s]erious drug offenses, like distribution or possession with intent to distribute, are *inherently violent* offenses." *United States v. Goins,* 647 F. Supp. 3d 538, 554 (E.D. Ky. 2022) (emphasis added) (citing *Torres-Rosario*, 658 F.3d at 113); *see also United States v. Atkins*, No. 24-029-DCR, 2024 WL 3316992, at *3 (E.D. Ky. July 5, 2024) (quoting *United States v. Wilkinson,* No. 23-020-DCR, 2024 WL 1506825, at *7 (E.D. Ky. Apr. 8, 2024)) ("[S]erious drug offenses, like distribution or possession with intent to distribute, are inherently dangerous and often violent offenses that justify disarming those who commit them."); *United States v. Robinson,* No. 23-CR-660, 2024 WL 2816025, at *4 (N.D. Ohio June 3, 2024).

Further, firearms are consistently recognized as "tools of the [drug] trade." *Martinez*, 938

---

solely on the basis of the allegations made on its face, and such allegations are to be taken as true. Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency.").

F.2d at 1083; *see also United States v. Twaddle*, No. 20-2128, 2021 WL 5122282, at *5 (10th Cir. Nov. 4, 2021) ("[F]irearms are 'tools of the trade' in drug trafficking, an industry in which violence . . . abound[s]."). Thus, it is axiomatic that "drugs and guns" are a "dangerous combination." *Muscarello v. United States*, 524 U.S. 125, 132 (1998).

Given the close relationship between drug distribution and violence, the court concludes that disarming Mr. Baker, a person convicted of Possession of Cocaine with Intent to Distribute within the past two years, is consistent with the historical tradition of disarming those persons "who demonstrated that they would present a danger to the public if armed," *Forbis*, 687 F. Supp. 3d at 1178, or "who present a credible threat to the physical safety of others." *Rahimi,* 144 S. Ct. at 1902. That is, "[t]he 'why' of the early laws prohibiting possession of firearms therefore aligns closely with the 'why' of modern laws prohibiting drug traffickers from possessing firearms: to protect the public from disorder and violence." *United States v. Reichenbach*, No. 22-CR-00057, 2023 WL 5916467, at *8 (M.D. Pa. Sept. 11, 2023). Likewise, "[t]he 'how' is just as easily discerned, and fits § 922(g)(1) just as well. The founding generation determined that preventing deadly violence and the disruption of an orderly society could only be achieved by stripping certain individuals of firearms." *Reichenbach*, 2023 WL 5916467, at *8.[5]

The court acknowledges that Possession of Cocaine with Intent to Distribute is "'a largely modern crime' with no direct historical analogue." *Reichenbach*, 2023 WL 5916467, at *6 (internal footnote omitted) (quoting *Alaniz*, 69 F.4th at 1129). However, although a "law must comport with the principles underlying the Second Amendment, . . . it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi,* 144 S. Ct. at 1898 (quoting *Bruen,* 597 U.S. at 30). Rather,

---

[5] In this regard, § 922(g)(1) is analogous to "going armed" laws, which punished those who "had menaced others with firearms" through forfeiture. *Rahimi,* 144 S. Ct. at 1901.

application of § 922(g)(1) to Mr. Baker need only "comport with the *principles* underlying the Second Amendment" and be "consistent with the *principles* that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898 (emphasis added).  For the reasons set forth above, applying § 922(g)(1) to Mr. Baker, a person recently convicted of Possession of Cocaine with Intent to Distribute, is "consistent with the *principles* that underpin our regulatory tradition"—that is, protection of society from persons who pose a credible threat to the physical safety of others if armed.  *Rahimi*, 144 S. Ct. at 1898, 1902.  Thus, Mr. Baker's as-applied constitutional challenge fails, and his motion to dismiss is denied.

## VI. Conclusion

WHEREFORE, the Motion to Dismiss the Indictment [Doc. 21] of defendant Antonio Dashawn Baker is denied.

IT IS SO ORDERED this 28th day of August, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE